Gail SHIPPER and Cathy
Smith, Plaintiffs,

v.

AVON PRODUCTS, INC. and Avon
Products, Inc. Retirement Plan,
Defendants.

No. 83 Civ. 1453 (JMC).

United States District Court,
S.D. New York.

Feb. 11, 1985.

702

Harold S. Elovich, New York City, for plaintiffs.

D'Amato & Lynch, New York City (Robert E. Meshel, Timothy P. Butler, New York City, of counsel), for defendant Avon Products, Inc. Retirement Plan.

1. Amended Verified Complaint, 83 Civ. 1453 (JMC) (filed July 6, 1983) ["Amended Complaint"].

Epstein Becker Borsody & Green, P.C., New York City (Gregory K. Hiestand, New York City, of counsel), for defendant Avon Products, Inc.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Defendants' motion for summary judgment is granted. Fed.R.Civ.P. 56(b).

### FACTS

Plaintiffs Gail Shipper and Cathy Smith originally brought this action in the Supreme Court of the State of New York. It was removed to this Court on February 24, 1983. The amended complaint, filed in this Court, contains five causes of action based upon violations of the federal statutes governing age discrimination and pension plans, as well as state laws governing wrongful discharge, contract, prima facie tort and fraud.[1] Jurisdiction is premised upon 28 U.S.C. § 1331. On June 3, 1983, Shipper filed another action based upon sex discrimination, 83 Civ. 4204 (JMC) (filed June 3, 1983), which was consolidated with this action. Order, 83 Civ. 1453 (JMC) (S.D.N.Y. June 28, 1983).

Most of the facts of the case are uncontested. Shipper was hired by defendant Avon Products, Inc. ["Avon"] in November 1971. Prior to that, she had not been employed full-time since May 1970. For eight years Shipper progressed along the company hierarchy with regular promotions until by the fall of 1979 she had achieved the position of Director, Project Communications. Her periodic performance appraisals indicate that she did very strong creative work, but had difficulties in her relations to other employees, which increased as her management responsibilities became more demanding.[2] She claims that she had few problems relating to other people and that she was sensitive and flexible, although

2. See Memorandum of Law in Support of defendant Avon Products, Inc.'s Motion for Summary Judgment, Exhs. D–I (filed June 11, 1984) ["Avon Memorandum"].

sometimes opinionated.[3] It is undisputed that she was perceived to have such problems by her superiors and that management made her aware of its concern about her performance as a manager.[4]

In January 1980, Plaintiff Shipper was first informed by her supervisor, D. Brooks Cole that her employment would be terminated.[5] She was then removed from her position as Director, Project Communications and assigned to work on a "beauty book."[6] According to plaintiff, she then spent the spring discussing with various Avon personnel the possibility of retaining her position or obtaining another position elsewhere in Avon. By letter dated June 16, 1980 to James Preston, President of the Avon Division, she stated that she did not "understand why [she] was let go," and that she still hoped for a reversal, albeit recognizing that such a possibility was "wishful thinking."[7] On June 27, 1980, she received a letter from J. Alvin Wakefield, Vice President and General Manager of the Avon Home Office Administration, confirming a conversation between Wakefield and Shipper of June 26. This letter states that Shipper's "last day at Avon" was to be June 30th and describes the severance package. The severance arrangement was to "go into effect on July 1st and [to be paid] on the regular two week pay days until [she found] employment or until the severance period ends," after 26 weeks of payments.[8] It states: "Our reason for treating your severance in this fashion is to keep you covered with your current benefit package during this period, or until employment is found."[9]

The severance payments were continued until December 31, 1980, although Shipper left Avon on June 30, 1980. Shipper does not dispute that she received these notices.[10] She claims, however, that she continued to discuss reemployment at Avon in another capacity throughout the fall and thus did not consider her employment to have terminated until December 31, 1980.

On August 24, 1981, Shipper filed a charge of sex and age discrimination with the Equal Employment Opportunity Commission ["EEOC"] based upon Avon's removal of her as Director of Project Communications, denial of pension rights and failure to "bridge" the approximately one and a half years remaining before her pension rights vested.[11] The EEOC dismissed her charge as untimely filed and issued her a right to sue notice.[12]

Shipper was 40 years old when she was fired. She was replaced by a man, aged 41. Her claim of sex discrimination is based upon her calculations of the percentages of women holding high-level management jobs at Avon.[13]

Plaintiff Cathy Smith was hired as a full-time employee of Avon on May 13, 1974. Except for two weeks of free-lance work for Avon, she had been unemployed since December 1973. She worked in numerous positions at Avon during her six years there, the last of which was Creative Manager, Project Communications. Her performance appraisals were consistently very good, with only minor criticisms.[14] On September 30, 1982, she was informed by telephone that she had been fired because her job had been eliminated. Accord-

---

3. *See* Affidavit of Gail Shipper, (filed July 20, 1984) ["Shipper Affidavit"].

4. *Compare, e.g.,* Memorandum from Brooks Cole dated September 20, 1977, Avon Memorandum, Exh. J *with* Letter to Cole from Gail Shipper, *id.,* Exh. K. *See also* Deposition of Gail Shipper at 54, 97–100, 142, (dated March 3, 1983) ["Shipper Transcript"].

5. Shipper Transcript at 171; Deposition of Marcia Worthing at 24 (dated July 19, 1984).

6. Shipper Transcript at 166.

7. Avon Memorandum, Exh. M.

8. *Id.,* Exh. N.

9. *Id.*

10. Shipper Transcript at 188.

11. Avon Memorandum, Exh. P.

12. *Id.,* Exh. Q.

13. Shipper Affidavit, Exh. A.

14. Avon Memorandum, Exhs. T–V.

ing to Smith's supervisor, Marcia Cantarella, Director, Project Communications, Smith was the weakest of the three managers in the department and thus dismissed when it became necessary to eliminate one of the Creative Manager positions. Smith claims she was not the weakest and that her position was not in fact eliminated, but just renamed.[15] She ceased employment on September 30, 1982, but was given a severance agreement similar to Shipper's that extended her severance payments until January 19, 1983.[16] Smith was 39 on September 30, 1982. She turned 40 on December 4, 1982. She filed no charge with the EEOC or any state or local fair employment agency.

Both plaintiffs were members of the Employees' Retirement Plan of Avon [the "Plan"], which has been duly qualified by the Secretary of the Treasury pursuant to the Internal Revenue Code. See 26 U.S.C. § 401(a).[17] The Plan provides that an employee's rights to pension benefits shall only vest after ten years of service at Avon. Because neither Smith nor Shipper had fulfilled the ten-year requirement before termination, neither received any pension benefits. Additionally, the Plan explicitly states that it "shall not be construed as conferring any legal rights upon any Employee nor shall it interfere with the right of the Employer to discharge any Employee."[18]

No employee handbook or manual from the relevant time period has been produced that contains language promising not to dismiss employees for lack of good cause or any other limitations upon the employer's right to discharge an employee. Although plaintiffs' Memorandum of Law in Opposition to this motion asserts that "during the pre-employment interview period, both plaintiffs were assured that they would not be discharged without just cause

or reason,"[19] neither plaintiff has ever asserted such to be the case. Nor is there any evidence that such statements were made to the plaintiffs. In fact, both plaintiffs have made statements to the contrary.

## DISCUSSION

A motion for summary judgment may only be granted if no genuine issue of material fact remains to be tried. *Granite Computer Leasing Corp. v. The Travelers Indem. Co.*, 751 F.2d 543 at 545 (2d Cir. 1984); *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244–45 (2d Cir.1984). Moreover, the Court must draw all reasonable inferences against the moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Schwabenbauer v. Board of Educ.*, 667 F.2d 305, 313 (2d Cir.1981), who retains the burden of proving that no material factual issue remains, *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (2d Cir.1980). Nonetheless, the party opposing the motion must present more than a mere conclusory allegation; some facts must be suggested that support the contentions. *See Markowitz v. Republic Nat'l Bank*, 651 F.2d 825, 828 (2d Cir.1981); *Applegate v. Top Assocs.*, 425 F.2d 92, 96 (2d Cir.1970).

### Age and Sex Discrimination

Defendants first argue that plaintiffs' claims under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ["ADEA"], and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ["Title VII"], are barred for lack of jurisdiction. Defendants contend that Shipper's claim is barred for failure to timely file charges with the EEOC and that Smith's is barred because she never filed an EEOC charge at all.

15. Affidavit of Cathy Smith (filed July 20, 1984).

16. Avon Memorandum, Exh. W.

17. *See* Affidavit of Marcia J. Worthing, Exh. A (filed June 11, 1984).

18. *See id.,* Exh. G; Employment Retirement Plan of Avon Products, Inc. of August 10, 1979 at § 9(2).

19. Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment at 41 (filed July 20, 1984).

■ Smith's claim is easily disposed of. She does not dispute that she failed to file charges with the EEOC. Nor does she dispute that such charges are a prerequisite to suit in federal court. The statute, on its face, requires that a civil suit not be filed until sixty days "after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C. § 626(d). Plaintiff's counsel has cited no cases, and this Court has been unable to find any, that suggest that a civil action may be commenced prior to the filing of the charge with the EEOC. On the contrary, not only must such a charge be filed but it must be filed within specific time limits. *See* 29 U.S.C. § 626(d)(1), (2). Accordingly, Smith's claim based upon age discrimination is dismissed.

Shipper's charge to the EEOC was filed on August 24, 1981 and dismissed as untimely filed. The relevant statutes require that a charge be filed within "300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1); 42 U.S.C. § 2000e–5(e). The issue in this case is when the "unlawful practice" occurred.

Because plaintiff Shipper was maintained on the books of Avon as an inactive employee and received pay in the form of salary and benefits until December 31, 1980, Shipper maintains that she was fired on that date and thus her EEOC claim was timely filed in August 1981. Shipper claims that even though she was no longer actually working, there were ongoing negotiations "for a continuation of employment" until December 1980.[20] Defendants argue that she was notified of the company's intent to fire her as early as January 1980 and at the latest by the end of June 1980, when she physically left the Avon premises and was placed under a severance pay agreement.

■ The Supreme Court has ruled that the statute of limitations for employment discrimination actions begins to run when the plaintiff is notified of the allegedly discriminatory act. *See Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Thus, if plaintiff was given clear notice of a decision to terminate her employment, then the fact that a period of severance pay may have continued beyond that time does not extend the statute of limitations. *See id.* at 257, 101 S.Ct. at 503; *Cameron v. United States Trust Co.*, 754 F.2d 109 (2d Cir. 1985); *Lyda v. American Broadcasting Cos.*, 34 Fair Empl.Prac.Cas. (BNA) 1151 (S.D.N.Y.1984); *EEOC v. Home Ins. Co.*, 553 F.Supp. 704 (S.D.N.Y.1982); *Pfister v. Allied Corp.*, 539 F.Supp. 224 (S.D.N.Y. 1982).

■ Although an ambiguously worded letter may not constitute adequate notice of termination, *see Verschuuren v. Equitable Life Assur. Soc.*, 554 F.Supp. 1188 (S.D.N.Y.1983), the severance agreement described in Wakefield's June 27 letter makes it absolutely clear that Shipper had been terminated and that all further payments were in the nature of severance. Any efforts made by the company after this date can only be interpreted as raising the possibility that she might be rehired. The Supreme Court held in *Ricks* that "collateral review of an employment decision, does not toll the running of the limitations periods." 449 U.S. at 261, 101 S.Ct. at 506. Avon's effort to find plaintiff a new job within the company after the signing of a severance agreement is, at best, such a collateral proceeding. Accordingly, Shipper's sex and age discrimination claims are dismissed.[21]

---

**20.** Shipper Affidavit at ¶ 15.

**21.** The Court finds plaintiffs' arguments that the statute of limitations should be tolled to be frivolous and without any basis in fact or law. *See Electrical Workers v. Robbins & Moyers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) (equitable tolling appropriate only when defendant has actively misled plaintiff); *Smith*

*v. American President Lines, Ltd.*, 571 F.2d 102, 110–11 (2d Cir.1978).

Additionally, the Court notes, without deciding, that neither plaintiff has alleged facts that would present a prima facie case of age discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Plaintiffs have not

*Pension Rights*

■ Plaintiffs allege that defendants violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ["ERISA"], by means of a "premeditated, deliberate, and wrongful plan to systematically terminate Avon employees approaching the tenth anniversary of their employment, so as to avoid an obligation to pay accrued pension benefits."[22] Under ERISA, an employee may recover if he can prove that he was discharged "for the purpose of interfering with the attainment of any right to which [the employee] may become entitled under the [pension] plan." 29 U.S.C. § 1140. A plaintiff raising this claim is necessarily faced with a difficult burden. Under New York law, an employer may fire a noncontract employee at will. Yet ERISA places a restricting factor on that freedom by providing that the motivating factor in firing an employee may not be to milk an employee for as long as possible and then fire him just in time to avoid vesting of pension benefits. *See Titsch v. Reliance Group, Inc.*, 548 F.Supp. 983, 985 (S.D.N.Y.1982). Thus the employee is left the very difficult task of proving that he was fired at least partly to avoid the vesting of his pension benefits.

■ Although a motion for summary judgment will ordinarily not be granted when intent is at issue, plaintiff must assert some facts "to support the claim that the state of mind existed." *Markowitz v. Republic Nat'l Bank*, 651 F.2d 825, 828 (2d Cir.1981). Here, as in *Titsch*, the plaintiffs have failed to meet this burden. They have presented no evidence, nor even alleged any specific facts, that would suggest that avoidance of pension benefits was a motivating factor. Moreover, they have not even made any specific allegations that would suggest that Avon had a "premeditated plan" to deprive employees of their pension benefits. The most they have come up with, after the close of discovery, is that they could call witnesses that would support their assertions. They have not

indicated who the witnesses are or what they would testify to. Similarly, they claim that others have had pension rights "bridged", but have not raised any evidence to contradict Avon's claim that only one high level employee has ever had his pension rights "bridged". To allow allegations such as these to defeat a motion for summary judgment would erase any distinction between a motion to dismiss under Fed.R.Civ.P. 12(b)(6) and a summary judgment motion under Fed.R.Civ.P. 56. *See Applegate v. Top Assocs., Inc.*, 425 F.2d 92, 96 (2d Cir.1970). For these reasons, plaintiffs' ERISA claims are dismissed.

*Wrongful Discharge*

Having granted summary judgment on all plaintiffs' federal claims, the state claims must be dismissed for lack of jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176 (2d Cir.1974) (after dismissal of federal claims, state law claims must be dismissed absent special circumstances). Because the parties have already expended considerable time in discovery, the Court does not rest its decision solely on this ground. Instead, it turns briefly to the substantive issues.

■ The Court finds that plaintiffs' claims sounding in fraud, prima facie tort, breach of contract and any state law claims with respect to pension rights that may be hidden in the pleadings are all variations on the tort of wrongful discharge. As such they are no more than inartful attempts to dodge the broad and explicit ruling of the New York Court of Appeals in *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983). In strong language, the court held in *Murphy* that no tort for wrongful discharge exists in New York and that the court was unwilling to create one in the absence of a legislative mandate. *Id.* 301–02, 448 N.E.2d at 89–90, 461 N.Y.S.2d at

even attempted to rebut defendants' very persuasive arguments on the substantive issues.

**22.** Amended Complaint at ¶ 21.

235–36.[23] *See Donovan v. UMIC, Inc.*, 580 F.Supp. 1455, 1466–67 (S.D.N.Y.1984).

Plaintiffs' argument that defendants' actions violated a strong state policy governing pension plans fails both because the Court has found that no pension rights were violated and because the provision of the New York State Constitution that plaintiffs cite, Art. V, § 7, applies only to state administered pension funds, not private ones.

Plaintiffs' fraud claim is apparently derived from the premise that Avon deliberately misled plaintiffs into coming to work for Avon in the belief that they would only be fired for just cause. There is no evidence that defendants made any such statements prior to plaintiffs' acceptances of employment. Moreover, this claim and the claim for breach of contract are barred by *Murphy* because they do not fit into the narrow exception created by *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982) (employee's manual shown to plaintiff prior to hiring and containing explicit statements restricting conditions of termination sufficient to create implied contract). *See Murphy*, 58 N.Y.2d at 305, 448 N.E.2d at 91, 461 N.Y.S.2d at 237. Defendants have presented overwhelming evidence that no company manual exists from which an implied contract to fire only for good cause could be inferred. Plaintiffs have produced no evidence to contradict this claim. Nor has either plaintiff alleged that she ever saw such a manual. *See Sprott v. Avon Products, Inc.*, 81 Civ. 2589 (RO) (S.D.N.Y. Oct. 11, 1984) (finding Avon not to have created any implied or express contract of employment).

Finally, plaintiffs' prima facie tort claim must fail because "there is no allegation that [their] discharge was without econom-

ic or social justification." *Murphy*, 58 N.Y.2d at 303–04, 443 N.E.2d at 445–46, 461 N.Y.S.2d at 236–37. The court in *Murphy* refused to allow the prima facie tort to circumvent "the unavailability of a tort claim for wrongful discharge." *Id.* at 304; 443 N.E.2d at 446; 461 N.Y.S.2d at 237.

### CONCLUSION

In accordance with the foregoing, defendants' motion for summary judgment is granted.

SO ORDERED.

---

**23.** Plaintiffs would apparently have this Court overrule the New York Court of Appeals and to that end provide an extensive discussion of the history of the "at will" doctrine.

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), however, this Court is governed by the rulings of the state courts in deciding substantive issues of state

law. Moreover, the Court notes that almost all of plaintiffs' discussion of this matter, Plaintiffs' Memorandum at 32–36, was lifted verbatim from Judge Platt's opinion in *Savodnik v. Korvettes, Inc.*, 488 F.Supp. 822, 824–26 (E.D.N.Y. 1980), which was decided before *Murphy v. Home Products*.