Roland C. HUEGEL, Plaintiff,

v.

Preston TISCH, Postmaster General, Defendant.

Civ. A. No. 87–2852.

United States District Court, E.D. Pennsylvania.

April 7, 1988.

---

Marc Kransen, Lee G. Rothman, Allentown, Pa., for plaintiff.

Robert L. Sawicki, Asst. Regional Labor Counsel, U.S. Postal Service, Philadelphia, Pa., for defendant.

## MEMORANDUM

TROUTMAN, Senior District Judge.

This case arises under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 and 794. Plaintiff Ronald Huegel alleges that he was denied employment with the United States Postal Service because of a back condition. He further alleges that his physician submitted a certification that he was medically able to perform the duties of the

position for which he had applied in September, 1978. Plaintiff seeks an award of backpay and attorney's fees, as well as employment in the position for which he had applied, including retroactive seniority and all benefits for which he would have been eligible had he been hired in 1978.

In this motion for partial summary judgment, defendant seeks only to limit the periods of time for which plaintiff might be eligible for backpay if he succeeds in proving his case at trial. Specifically, defendant contends that, as a matter of law, there can be no backpay award for the two year period during which plaintiff was a full-time student in a medical technology program. Moreover, defendant further contends that plaintiff's eligibility for backpay ended in early 1985 when the Postal Service unconditionally offered plaintiff employment in the position he seeks. Plaintiff refused the offer, which did not include any provision for retroactive seniority or benefits.

■■■ Both of these issues implicate the plaintiff's duty to mitigate damages in an employment discrimination case, as explained at length by the U.S. Supreme Court in *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982) and other cases. See, *e.g., Smith v. American Service Co. of Atlanta, Inc.*, 796 F.2d 1430 (5th Cir.1986); *Miller v. Marsh*, 766 F.2d 490 (11th Cir.1985); *Nord v. U.S. Steel Corp.*, 758 F.2d 1462 (11th Cir.1985); *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269 (4th Cir.1985); *Hanna v. American Motors Corp.*, 724 F.2d 1300 (7th Cir.1984).[1] Congress's purpose in enacting legislation to remedy employment discrimination was to provide relief to the

victims of discrimination while discouraging the future practice thereof. Thus, Congress vested in the courts broad powers to fashion and apply remedies to protect present and future potential victims of discriminatory conduct and to place past victims in the position they would have enjoyed absent the unlawful conduct to which they were subjected. Because these remedies are equitable, relief is to be tailored to each plaintiff's particular situation. Moreover, the plaintiff is obligated to mitigate damages by seeking comparable alternate employment through the exercise of reasonable diligence. *Ford v. EEOC, Miller v. Marsh.* It is the defendant's burden to prove lack of such diligence when requesting that the Court not award backpay for any period. *Nord v. U.S. Steel.*

■ Those courts which have tolled the accrual of backpay during a plaintiff's full-time pursuit of higher education have based their decisions upon the individual's unavailability for full-time employment during that period. *See, e.g., Miller v. Marsh.* Conversely, those courts which have allowed the continued accrual of backpay while a plaintiff pursued an educational program did so upon finding that it was reasonable under the circumstances and/or that the plaintiff remained ready, willing and able to accept the position sought or comparable employment. *Smith v. American Service Co. of Atlanta, Hanna v. A.M.C., Brady v. Thurston.* It is clear, then, that there is no *per se* rule that backpay is tolled during periods of enrollment in an educational program.[2] Rather, the issue is to be determined in the context

---

1. *Ford* and most of the other cases cited herein were decided under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(g). In the Rehabilitation Act of 1973, (29 U.S.C. § 794a), Congress specifically provided for application of the "remedies, procedures, and rights set forth" in § 2000e–5(g) to complaints arising under 29 U.S.C. § 791. Consequently, we conclude that the analysis employed in *Ford* and other cases applying the mitigation provisions of Title VII is completely applicable in this context.

2. The Court of Appeals for the Tenth Circuit, in *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263

(10th Cir.1975), appears to have fashioned and applied a *per se* rule, but did so without a discussion of the mitigation language and without the benefit of the Supreme Court's analysis in *Ford v. EEOC.* Since the decision in *Ford,* all courts which have considered the issue analyzed it in terms of the mitigation requirement and have considered it a factual inquiry. Moreover, despite the broad language used in *Taylor,* the actual holding was simply that the trial court had not abused its discretion in denying backpay under the circumstances there present.

of the factual matrix existing in a particular case.

■ Here, no evidence was adduced at plaintiff's deposition from which the Court can determine whether the plaintiff was unavailable for work during the time in which he was enrolled in a full-time educational program. The fact that it was full-time rather than part-time is a factor which may indicate that, in fact, he was not so available but is by no means conclusive on the issue. Consequently, we will deny this portion of defendant's motion at this time, subject to reconsideration at trial if the verdict is in favor of the plaintiff and the defendant sufficiently bears its burden of proof on the issue.

Defendant's second basis for partial summary judgment concerns squarely the issue considered and decided by the Supreme Court in *Ford v. E.E.O.C., i.e.,* whether a defendant's potential liability for backpay is tolled when it has made an unconditional offer of employment to the plaintiff of the job in question. In *Ford,* the Court held that while a plaintiff need not compromise the claim or accept a non-comparable job, the remedial purposes of Title VII and most particularly, the duty to mitigate damages, require that the defendant's liability for backpay end with such an offer. This is true even where, as here, the offer does not include retroactive seniority. The entitlement to seniority and other benefits which would have accrued had the plaintiff been hired initially are matters to be determined after litigation on the merits concludes. The plaintiff remains entitled to pursue them as remedies if he or she prevails at trial, notwithstanding the acceptance of the offered employment which did not include those benefits.

On February 28, 1985, the defendant sent to the plaintiff a letter bearing the following message:

Dear Mr. Huegel:

This has reference to the physical examination given to you by Dr. David Sussman of February 13, 1985, as a result of our meeting concerning your EEO complaint with the U.S. Postal Service.

As a result of the examination, it is Dr. Sussman's opinion that you are now able to perform the duties of an LSM trainee without restrictions or accommodations. Based on this information, and in an attempt to settle your complaint, you are hereby offered the next available LSM trainee position at the Lehigh Valley facility.

Please advise me in writing of your decision regarding this offer.

Sincerely,

John A. Higgins

Labor Relations Representative

MSC Lehigh Valley

(Exhibit D–4 to Defendant' Motion for Partial Summary Judgment, Doc. # 8).

Plaintiff argues that the above-quoted offer was not unconditional in that the offer was qualified by the phrase, "in an attempt to settle your claim". Additionally, plaintiff notes that he was not represented by counsel during the administrative proceedings which took place prior to the filing of this lawsuit in 1987.

In *Ford,* the Supreme Court recognized that, in a particular case, there may be "exceptional circumstances" which would warrant the trial court's decision, "in the exercise of its sound discretion", to award backpay "accrued after the rejection of an employer's offer." *See, Ford v. EEOC,* 458 U.S. at 327, 102 S.Ct. at 3069, 73 L.Ed. 2d at 737. Other courts have noted that it is the trial court's task to consider all of the circumstances surrounding the offer and its rejection to determine whether, under the circumstances, the plaintiff's refusal to accept the defendant's offer was reasonable. *See, Blomstrom v. Bethlehem Steel Corp.,* No. 87–1472 slip op. at 3 (E.D.Pa. Nov. 19, 1987) [available on WESTLAW, 1987 WL 20235] and cases cited therein. It is this Court's task, then, to determine in this case whether, because of exceptional circumstances or otherwise, plaintiff's refusal of the offer was reasonable or whether that refusal should operate as a bar to any backpay accruing thereafter.

■ The fact that the offer did not include retroactive seniority and other benefits cannot of course, constitute the excep-

tional circumstances referred to in *Ford.* That omission, as well as the reference to settlement, does, however, bear upon the reasonableness of plaintiff's failure to accept the employment offer. As the court noted in *Blomstrom,* following the rationale set forth in *Ford v. EEOC,* "[I]ncentives to employers to hire claimants ... should be structured so that employers will be encouraged to make good faith offers of employment and claimants will be reasonably informed of the terms of the offers before choosing to accept or reject them." slip op. at 4. Otherwise, a claimant might not realize that he or she need not relinquish, for all time, claims for backpay and other retroactive benefits in accepting an employment offer which does not include such benefits or which definitely excludes them.

 Here, it is reasonable to conclude that a claimant unrepresented by counsel might assume that acceptance of the offer would amount to an agreement to settle the entire claim on the terms contained in the initial letter, particularly when his request for clarification of the terms went unanswered.

In fashioning an employment discrimination remedy, the Court acts as a Chancellor in Equity. *Ford v. EEOC.* In that capacity, we must retain the flexibility to consider all circumstances if and when we are put to the task of ordering relief for a plaintiff who has succeeded in proving discrimination in employment. For that reason, we decline to foreclose completely, in advance of trial, a remedy which may be appropriate under the circumstances when fully developed and exposed.

First, the Court would like the opportunity to determine whether defendant was represented by counsel with knowledge of the *Ford* decision when the offer was made and to satisfy ourselves that the letter was not artfully drafted specifically to toll backpay liability while suggesting to an unsophisticated plaintiff that an acceptance would indicate a willingness to settle the claim completely. *See, Blomstrom,* slip op. at 4, n. 1. A plaintiff not represented by counsel and whose claim has not advanced to litigation should have a further clarification of an employment offer if the defendant is represented by counsel. The claimant ought to be told, for instance, that he retains the right to seek retroactive benefits even if the offer is accepted. Likewise, he ought to be given some explanation of what he might forfeit if he chooses not to accept the offer.

Moreover, even if we were to conclude now, without a full exploration of the reasons for plaintiff's rejection of defendant's offer of employment, that the offer did toll its backpay obligation, we cannot determine from the present record when the tolling actually began. We do not know, for example, when the next LSM trainee position became available. It would unnecessarily and perhaps unfairly tie our hands to hold, at this stage of the proceedings, that backpay accrual ceased on the date the offer of employment was refused when the next position might not have been available for a year.

Finally, it is not sound judicial practice, particularly when our task is of an equitable nature, to decide ahead of time an issue which we may never reach at trial.

For these reasons, we will deny this portion of defendant's motion for summary judgment at this time. Again, we do so without prejudice to defendant's ability to raise the issue at trial.