**U.S. EQUAL EMPLOYMENT OPPORTU-
NITY COMMISSION and Charles H.
Wessel, Plaintiff,**

**v.**

**AIC SECURITY INVESTIGATIONS,
LTD.; AIC International, Ltd., and
Ruth Vrdolyak, Defendant.**

**No. 92 C 7330.**

United States District Court,
N.D. Illinois, E.D.

June 7, 1993.

Jean P. Kamp, Supervisory Trial Atty., Allison J. Nichol, Elaine M. Chaney, Trial Attys. and John C. Hendrickson, Regional Atty., for E.E.O.C.

Edward Glennon, Thomas E. Glennon and Deborah Regan of Lindquist and Vennum, Minneapolis, MN, for Charles H. Wessel.

James B. Sherman and Frank A. Gumina of Wessels and Pautsch, Milwaukee, WI, for AIC Sec. Investigations, Ltd. and Ruth Vrdolyak.

## ORDER

GUZMAN, Magistrate Judge.

Pending is plaintiffs' U.S. Equal Employment Opportunity Commission ("EEOC") and Charles H. Wessel's ("Wessel") motion for entry of judgment on the jury verdict of March 18, 1993. This motion is made pursuant to Federal Rule Of Civil Procedure 58. At the court's suggestion the parties have submitted briefs not only on the issue of the injunctive relief being sought by the plaintiffs, but also on the issues of the limitations on punitive and compensatory damages contained in governing statutes. For the reasons listed below this motion is granted in part and denied in part.

## BACKGROUND FACTS

This action is brought pursuant to Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The EEOC and the Intervening Plaintiff, Charles Wessel ("Wessel"), alleged that AIC discriminated against Wessel on the basis of his disability, terminal cancer, by discharging him from his position as Executive Director at AIC.

Following eight days of testimony, the jury found that defendants AIC Security Investigations, Ltd. ("AIC") and Ruth Vrdolyak ("Vrdolyak"), discharged Wessel because of his terminal cancer, despite the fact that he remained able to perform the essential functions of his position as Executive Director of AIC. The jury then awarded Wessel $22,000.00 in backpay; $50,000.00 in compensatory damages; $250,000.00 in punitive damages against AIC; and $250,000.00 in punitive damages against Vrdolyak.

Plaintiffs have moved for entry of judgment requesting that judgment be entered in favor of the EEOC and Wessel as follows:

1. AIC shall pay Wessel the sum of $22,000.00 as back pay based on the jury award, plus interest at the rate of (6%), compounded annually, to the date of judgment, in accordance with 42 U.S.C. § 2000e–5, incorporated by reference into the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12117.

2. AIC and Vrdolyak, jointly and severally, shall pay Wessel the sum of $50,000.00 as compensatory damages, based upon the jury award, in accordance with 42 U.S.C. § 1981a(b).

3. AIC shall pay Wessel the sum of $200,000.00 as punitive damages, reduced from the jury award of $250,000 in accordance with 42 U.S.C. § 1981a(b); provided that, the sum of compensatory damages and punitive damages paid by AIC to Wessel shall not exceed $200,000.00.

4. Vrdolyak shall pay Wessel the sum of $250,000.00 as punitive damages, based upon the jury award, in accordance with the provisions of 42 U.S.C. § 1981a(b).

5. AIC, its officers, agents, employees, successors, and all those in active concert or participation with them, or any of them; and Vrdolyak, are enjoined from engaging in an employment practice which discriminates against any qualified individual on the basis of disability, including, but not limited to, discharging any qualified employee because of his or her disability.

6. AIC, its officers, agents, employees, successors, and all those in active concert or participation with them, or any of them; and Vrdolyak, shall not engage in retaliation or reprisal of any kind against any person because of such person's opposition to any practice made unlawful under the ADA, because of such person's filing a charge, testifying or participating in any manner in any investigation, proceeding or hearing under the ADA, because such person was identified as a potential witness for the EEOC in this action, because such person participated in any manner in this action or in the investigation giving rise to this action, or because such person asserts any right under this Judgment.

7. With seven (7) days of the entry of Judgment, AIC and Vrdolyak shall provide a copy of the Notice attached as Exhibit A to every employee of AIC. In addition, AIC and Vrdolyak shall post a copy of the Notice on the premises of AIC in a conspicuous location in an area commonly frequented by employees of AIC. AIC and Vrdolyak shall also post a copy of the Notice in a conspicuous location at every site where AIC currently posts general notices to its employees working on contract as security guards.

8. AIC and Vrdolyak shall maintain and keep available for inspection and copying by the EEOC records providing the following information with respect to any employee who is disabled within the meaning of the ADA: name, address, telephone number, social security number, date of hire, date of disciplinary action if applicable, date of discharge if applicable, and reason for any adverse employment action.

9. Every six (6) months for the duration of this Judgment AIC and Vrdolyak shall provide to the EEOC a report including the information set forth in the records described in Paragraph 8.

10. This Judgment shall remain in effect for a period of three years from the date of entry.

Defendants have objected to paragraph (2) of plaintiffs' proposed judgment because the jury award of $50,000.00 in compensatory damages is excessive and against the weight of the evidence at trial. Defendants further object to paragraph (2) of plaintiffs' proposed judgment because it impermissibly fails to aggregate "the sum of the amount of compensatory damages awarded and the amount of punitive damages awarded" for purposes of the statutory caps on such damages. *See* 42 U.S.C. § 1981a(b)(3).

Defendants have objected to paragraphs three (3) and four (4) of plaintiffs' proposed judgment because plaintiffs failed to aggregate "the sum of the amount of compensatory damages awarded and the amount of punitive damages awarded" for purposes of the statutory caps on such damages. *See* 42 U.S.C.

§ 1981a(b)(3). Defendants similarly claim that the award of punitive damages as listed in paragraphs three (3) and four (4) is excessive. Defendants further object to paragraph four (4) arguing that it wholly ignores 42 U.S.C. § 1981a(b)(3) which states that the total compensatory and punitive damages recoverable by Wessel "shall not exceed" $200,-000.00.[1] In addition, defendants argue that plaintiffs have incorrectly concluded that the Civil Rights Act of 1991 places no cap on the compensatory or punitive damages awarded against Ruth Vrdolyak.

As to paragraphs five (5) through (10) defendants object to the requested injunctive relief arguing that it is punitive in its effect and would not serve any principles of equity. In addition, defendants object to the proposed three year period and the posting of the EEOC's Notice at the property of AIC's clients arguing that it is intrusive, would cause the loss of such clients, and would serve no equitable purpose in light of the massive media attention and publicity given to this action since its inception.

Finally, defendants claim that the injunctive relief is nonsensical in that it would apply to "any person" filing a charge, opposing an unlawful practice under the ADA. Defendants point out that they already prohibited by lay from retaliating against AIC's employees of applicants in accordance with 42 U.S.C. § 2000e–3.

## DISCUSSION

### THE AWARD OF COMPENSATORY DAMAGES WAS NOT EXCESSIVE

Defendants first contend that the jury's award of $50,000.00 in compensatory damages is excessive and goes against the manifest weight of the evidence at trial. In support of this argument defendants point out that the jury did not award full back pay through the date of the trial. Rather, the backpay award of $22,000.00 is consistent with the testimony of Dr. Petras who testified in court that Wessel was medically unfit to work as AIC's Executive Director beyond the time he experienced seizures in November and December of 1992. Here, where the jury awarded roughly four months in backpay, its award of compensatory damages was speculative and excessive.

In response to this argument, plaintiffs contend that the evidence in this case overwhelmingly indicated that, for Wessel, work was the dominant force in his life. His accomplishments as a acknowledged leader in his field demonstrated his dedication to work. Further, his achievements at AIC, in presiding over the division as it more than tripled in guard hours contracted and in profits is testimony that he always worked long hours, except when actually receiving medical treatment.

■ The standard for reviewing the dollar amount of this type of jury award has recently undergone some change. *Fleming v. County of Kane, State of Ill.,* 898 F.2d 553, 561 (7th Cir.1990). Under our traditional standard, only in those circumstances where the jury damage award is "monstrously excessive," a product of passion and prejudice, or if there is no rational connection between it and the evidence, may the trial court disturb it. *Cygnar v. City of Chicago,* 865 F.2d 827, 847 (7th Cir.1989). As an additional consideration, however, the courts have now further noted that we must also examine compatibility among such awards—i.e. whether the award is out of line with other awards in similar cases. *Id.* at 848. The defendant who challenges a jury's award of compensatory or punitive damages based on the claim of insufficient evidence bears a heavy burden. The jury is the trier of fact, charged with determining the credibility of witnesses, weighing the evidence, and drawing reasonable inferences therefrom. Its findings are traditionally given great weight. *Littlefield v. McGuffey,* 954 F.2d 1337, 1348 (7th Cir.1992).

A review of the record in this case, together with a review of the amounts awarded in other similar cases, leads me to the conclusion that the award of $50,000.00 in compensatory damages is not "grossly excessive"

---

1. The parties have stipulated in the Pre–Trial Order that this is a case of a Respondent who has more than 200 but fewer than 500 employees. The statutory cap is therefore set at $200,000.00.

and does fall within the range of reasonable damages under the circumstances.

The record in this case does show a rational connection between the evidence and the damage award. During the course of the trial, the jury heard evidence describing that for Charles Wessel, his life was his work. His wrongful discharge caused him and, unfortunately, his children and wife to suffer as well.[2] Further, Wessel testified that his self esteem was affected by his termination.[3]

Moreover, it is undisputed that Wessel was fired at a time when the prognosis was that he was dying from cancer but nonetheless had no choice but to continue to work for financial reasons. The jury had the right to consider the emotional impact of such a termination on a person who was simultaneously faced with the burden of his own impending death and his resulting inability to continue to provide for those who depend upon him. Such a burden is clearly greater than that which is suffered by the ordinary victim of a wrongful discharge. Wessel was not able to find new employment and in December of 1992 he was hospitalized because of seizures caused by his brain tumors. This evidence, that Wessel's career was ended at a time when he was dying and concerned about the future, justifies a compensatory award of approximately one years salary. In light of this evidence, I cannot conclude that the award of $50,000.00 was unsupported by the evidence, monstrously excessive, or without rational connection to the evidence before the jury.

Thus, there now remains only to consider the compatibility of this award to amounts awarded in other similar cases. A comparison of awards under the Americans With Disabilities Act is not possible since this is the first such case under the act. There are however, many age, race and gender employment discrimination cases to compare. In *Webb v. City of Chester, Illinois,* 813 F.2d 824 (7th Cir.1987), an action brought under 42 U.S.C. § 1983, the Court reviewed awards in cases involving wrongful discharge on the basis of race and age and determined that the range of awards was from $500.00 to over $50,000.00 for compensatory damages. Further, awards in discrimination cases since *Webb,* include an award of $40,000 in *Fleming v. County of Kane, State of Ill.,* 898 F.2d 553, 562 (7th Cir.1990) and of $50,000.00 in *Littlefield v. McGuffey,* 954 F.2d 1337, 1348 (7th Cir.1992).

Wessel was awarded $50,000.00 in compensatory damages. This award falls within the upper limits of the above range. It is therefore, not out of line when compared to other awards in similar cases. Accordingly, defendants' request for remittitur of the $50,000.00 compensatory damages award is denied.

### THE SUM OF THE AMOUNT OF COMPENSATORY DAMAGES AND PUNITIVE DAMAGES SHOULD BE AGGREGATED FOR PURPOSES OF THE STATUTORY CAP

Defendants' second objection contends that plaintiffs have failed to aggregate the sum of the amount of compensatory damages and the amount of punitive damages awarded as required by the statutory caps on such damages pursuant to 42 U.S.C. § 1981a(b)(3). In particular, defendants claim that compensatory and/or punitive damages may only be recovered as allowed in subsection (b) of Section 1977A of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Section 1981a(c) provides for a jury trial where a complaining party seeks compensatory or punitive damages, however, the court shall not inform the jury of the limitations described in subsection (b)(3). *Id.* at sub. (c)(2). The limitations of subsection (b)(3) are, in pertinent part, as follows:

(3) **Limitations**

The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed for each complaining party—

---

**2.** Videotaped Deposition of Charles H. Wessel, 11–5–92, p. 100.

**3.** *Id.* at 101.

(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;

(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding year, $100,000; and

(C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding year, $200,000.00.

■ Both the EEOC and Wessel sought compensatory damages in their complaints, and the award runs in favor of both, although it will of course, be paid only to Wessel. In response to this reduction argument plaintiffs submit that any reduction of the jury award pursuant to this cap on the sum of compensatory and punitive damages established in 42 U.S.C. § 1981a, should not apply to the compensatory damage award, but only to the punitive damages portion of the award.

I agree with defendants that the limitations contained in 42 U.S.C. § 1981a(b)(3)(C) should be applied in the instant case. The above statutory language unquestionably provides a limitation on the sum of punitive damages and compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses." Further, I agree with plaintiffs that the portion of the award to be reduced to meet the limit of this ceiling is the punitive damage award and not the compensatory damage award. As indicated above, the compensatory damages award is not excessive in light of defendants' behavior, and is in line with other awards in similar cases. Because the parties stipulated in the Pre–Trial order that this is a case of a Respondent who has more than 200 but fewer than 500 employees, the punitive damages award and the compensatory damages award ($50,000.00) combined can not total more than $200,000.00. Thus, the punitive damage award will be reduced to $150,000.00 to meet the requirements of 42 U.S.C. § 1981a(b)(3)(C).

## THE STATUTORY CAP APPLIES TO DEFENDANT RUTH VRDOLYAK

Next, defendants point out that the plaintiffs' draft judgment would apply the statutory cap only to defendant AIC, with no limitation on the judgment against defendant Vrdolyak. This position, defendants contend, is inconsistent with the EEOC's *Advance Policy Guidance re: Availability of Compensatory and Punitive Damages Under the Civil Rights Act of 1991,* issued July 7, 1992.

Plaintiffs point out that defendants objections to this punitive damage award is not supported by the language of the statute nor the legislative history. Plaintiffs similarly argue that § 1977A(b)(1) states that a complaining party may recover punitive damages if that party demonstrates that the respondent engaged in discriminatory practices(s) with malice or with reckless indifference to the federally protected rights of an aggrieved individual. 42 U.S.C. § 1981a(b)(1). Section 1977A(b)(3) (not § 1977A(b)(1)) contains the limitation provision on the sum of compensatory and punitive damages. This limitation section, plaintiffs contend, contains no limitation for an individual, as distinct from business/employer defendants.

A close review of the statute as well as the EEOC's Policy Guidelines reveals that plaintiffs' interpretation of § 1977A(b)(1) is not a correct application of the legal rules and guidelines. Section 1981a(a)(2) provides as follows:

### Disability

In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. section 2000e–5 or 42 U.S.C.A. section 2000e–16] (as provided in section 107(a) of the Americans With Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 794(a)(1) of Title 29, respectively against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 791 of Title 29 and the regulations implementing section 791 of Title

29, or who violated the requirements of section 791 of title 29 or the regulations implementing section 791 of Title 29 concerning the provision of a reasonable accommodation, or section 102 of the American With Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violations of section 102(b)(5) of the Act (42 U.S.C. section 12112), or committed a violation of section 102(b)(5) of the Act [42 U.S.C.A. section 12112(b)(5)], against an individual, *the complaining party* may recover compensatory and punitive damages allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. section–5(g)], from the respondent. (Emphasis added).

Likewise, 42 U.S.C. § 1981a(b)(1) provides as follows:

### (1) Determination of Punitive

A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or reckless indifference to the federally protected rights of an aggrieved individual.

■ The language of 42 U.S.C. § 1981a(b)(3) is such that it is most directly applicable to employers. It limits the amount of combined compensatory and punitive damages on the basis of the number of employees the respondent has. It can therefore be argued that the language, and therefore the limitation, is not applicable to someone with no employees, e.g., an individual defendant sued as an agent of the employer. But such an argument is purely mechanical and the conclusion that 42 U.S.C. § 1981a(b)(1) and § 1977A(b)(1) permit the unlimited recovery of punitive damages against an individual respondent is simply not supported by a comprehensive reading of the statute. The entities excluded from the limitations section of 42 U.S.C. § 1981a(b) are clearly delineated as the government, a governmental agency or a political subdivi-

sion. There is no exclusion for individuals, non employers or agents of employers. Further, Vrdolyak's liability stems solely from her status as an agent of AIC, as defined in the ADA, 42 U.S.C. § 12111(5)(a), and it would be illogical to cap the damages recoverable against the employer and allow unlimited liability as to its agent.

■ Finally, 42 U.S.C. § 1981a(b)(3) provides that the limitation on punitive and compensatory damages is to be applied on a "complaining party" basis not a "respondent" basis. It is therefore the amount of money which the complainant may recover that must be the focus. There is no way in which the individual defendant, Ruth Vrdolyak, may be held liable for the full amount of the punitive damages awarded by the jury without directly violating this statutory limitation as to the aggregate amount which the "complaining party" may recover. Thus, the award of punitive damages against Vrdolyak must be reduced to meet the limitations set forth in the statute. This must be done regardless of whether or not the jury award was excessive under traditional case law analysis.

### THE AWARD OF $500,000.00 IN PUNITIVE DAMAGES WAS EXCESSIVE

Defendants next contend that the award of $500,000.00 in punitive damages as well as the capped total of $200,000.00 in compensatory and punitive damages were both excessive. Defendants rely on *Ackerman v. Western Electric Co, Inc.*, 860 F.2d 1514 (9th Cir.1988). This case involved the termination of a handicapped employee who contracted a bronchial infection, which aggravated her preexisting asthmatic condition. *Id.* at 1516. Western Electric denied Ms. Ackerman the opportunity to return to work even after physicians released her for work with the restriction "to stay away from dust, heavy exercise." *Id.* The court held that "[w]hile the Company's actions were 'unfounded, misguided, and extremely ill-advised,' that fact was not a sufficient basis for imposing punitive damages." *Id.* at 1521.

Turning to the instant matter, defendants point out that Wessel was concededly diminished in his capacities, he was unable to complete his tasks on time and that he was experiencing sever headaches and lapses in short-term memory. Furthermore, Wessel's videotaped deposition demonstrated an intent at one time on Wessel's part to voluntarily retire under terms which he proposed himself. These facts coupled with the testimony of five medical experts who were unable to agree on the date that Wessel became medically unable to work, leads to the conclusion that defendants could not have acted with malice or wanton disregard of Wessel's rights.

■ In response to this argument, plaintiffs point out that defendants' conduct toward Wessel was egregious. Numerous witnesses, including Wessel's former boss, a representative for the largest client of the company, one of the company's attorneys, peers and subordinates all testified regarding Wessel's continuing ability to perform his job despite his terminal illness. In fact, plaintiffs contend that all but one of the medical experts testifying at trial came to the conclusion that Wessel was capable of performing his job on the date he was terminated. Yet, without regard to Wessel's continuing abilities to perform his job, defendants terminated Wessel, forcing him to find alternative employment for the final months of his life. Likewise, the abrupt and indirect manner in which Wessel was terminated, after many years of service, to the defendants and in the industry, further underscores the egregiousness of the conduct.

Plaintiffs also argue that Wessel's own testimony regarding the personal and professional humiliation he experienced as a result of the termination demonstrates the pervasive extent of harm to him. Finally, plaintiffs argue that the defendants have no remorse for their conduct and are unlikely to act differently in the future.

Certainly Ruth Vrdolyak's testimony, as the sole owner of AIC, can support a reasonable inference of lack of remorse and likelihood of future violations. Mrs. Vrdolyak testified that to the day of her testimony she had no idea why she was in court to begin with since it was her belief that Wessel voluntarily retired. In court she denied having terminated Wessel because of his illness, but she was effectively impeached by a statement she gave to a newspaper reporter shortly after Wessel was fired. Such testimony reflects a cynical attitude towards the judicial process as well as the purposes and intent of the Americans With Disabilities Act. From such statements, coupled with the totality of Vrdolyak's testimony and the rest of the evidence in the case, the jury can reasonably infer a lack of remorse and a likelihood of future violations. Upon such an inference punitive damages may, in part at least, be based.

The outrageousness of conduct must also be viewed in light of the totality of the circumstances of the particular case. There is evidence from which the jury could conclude that Wessel was responsible for much of AIC's success. His extraordinary efforts contributed significantly to the company's growth, and his personal strength of character allowed him to focus all of his resolve towards continuing to perform his duties under conditions which most would have found intolerable. His record of total dedication to his job and employer is without question. There is also evidence to support a conclusion that Ruth Vrdolyak knew little about the business or about Wessel's contributions or continuing ability to function when she determined to discharge him. The jury could, based upon the evidence, also have concluded that the manner in which she wrongfully discharged such a fiercely loyal employee reflected a reckless indifference to his rights and a callous insensitivity to his human condition. Having heard the testimony of the various witnesses in this case as well as observed the manner in which they testified, it is clear that such findings are reasonable under the evidence and are sufficient to justify a determination that the plaintiffs' conduct was so egregious as to justify an award of punitive damages.

■ The amount of punitive damages appropriate in a particular case is within the province of the jury: "translating legal damage into money damages—especially in cases which involve few significant items of mea-

surable loss—is a matter peculiarly within a jury's ken." *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 577 (1st Cir.1989). An award of punitive damages to punish a wrongdoer for outrageous conduct and to deter others from that same conduct must however be supported by the record and not constitute a windfall to the plaintiff. *Ramsey v. American Air Filer Co.*, 772 F.2d 1303, 1314 (7th Cir.1985) (citing *McKinley v. Trattles*, 732 F.2d 1320, 1327 (1984). The court may reverse an award of punitive damages if it is merely a windfall to the plaintiff. *Id.*

■ The jury awarded $22,000.00 in backpay, $50,000.00 in compensatory and $500,-000.00 in punitive damages. It follows that the punitive damage award is ten (10) times the compensatory. Although the record does support an award of punitive damages, it does not support an award of ten times the compensatory damages. The jury's backpay award indicates that the jury itself would not permit Wessel to work more than approximately four months beyond the date of his termination by defendants. Further, the testimony of the expert physicians was conflicting as to the exact date that Wessel became unable to work. Clearly, as pointed out above, the jury is well within reason in determining that the manner in which defendants terminated Wessel was outrageous in light of the fact that Wessel suffered from terminal brain cancer. But, I cannot conclude, based upon the appellate court precedent, that the record of the trial supports an award of $500,000.00. Therefore, the award of punitive damages is reduced to $150,000.00, which represents three (3) times the amount of compensatory damages and meets the requirements of the statutory limitation.

While the Act sets a limit or cap on the aggregate amount of compensatory and punitive damages, it is silent on how the reduced award should be apportioned among the defendants. In cases in which punitive damages are assessed in unequal amounts, but in the aggregate are more than the statutory cap, how should the required reduction in damages be apportioned? It seems that the ideal solution would be to advise the jury of the limitation at the time the case is submitted to it so that the jury could decide, within the maximum allowed amount, how much in punitive damages to assess against each defendant in accordance with the degree of fault found. The Act, however, specifically prohibits advising the jury of the limitations.[4] It is therefore left to the court to do so after the entry of the judgment. In this case the jury assessed equal amounts in punitive damages against each defendant. I have therefore concluded that this award of punitive damages should be joint and several. There is precedent for joint and several punitive liability in federal civil rights causes of action. In *Miller v. Apartments and Homes, Inc.*, 646 F.2d 101 (3d Cir.1981), the corporate owner and defendant sole-shareholder, were held jointly and severally liable for punitive damages in a housing discrimination action. The Court explained as follows:

> Federal courts award punitive damages when a defendant has acted with actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so *Cochetti v. Desmond*, 572 F.2d 102, 106 (3d Cir.1978), or "with such conscious and deliberate disregard of the consequences of his action to others that his conduct is wanton". *Knippen v. Ford Motor Co.*, 546 F.2d 993, 1002 (D.C.Cir.1976) We hold an employer liable for punitive damages for the conduct of his agent when the record show that he was, "by action or knowledgeable inaction, involved in the wrong doing" *Marr v. Rife*, 503 F.2d 735, 745 (6th Cir.1974) or that he has "authorized, ratified, or fostered the acts complained of". *Williams v. City of New York*, 508 F.2d 356, 361 (2d Cir.1974).

*Miller v. Apartment and Homes, Inc.*, 646 F.2d 101, 111 (3d Cir.1981). See also *Seaton v. Sky Realty Co.*, 372 F.Supp. 1322 (7th Cir.1972), aff'd 491 F.2d 634 (7th Cir.1974) and *Hamilton v. Svatik*, 779 F.2d 383 (7th Cir.1985).

In the instant case there was personal participation on Mrs. Vrdolyak's part in the

4. Section 1981a(c) provides for a jury trial where a complaining party seeks compensatory or punitive damages, however, the court shall not inform the jury of the limitations described in subsection (b)(3). *Id.* at sub. (c)(2).

decision to terminate Wessel and it is undisputed that AIC ratified the actions of its sole-shareholder Mrs. Vrdolyak. Further, both defendants were assessed the identical amount of punitive damages and, although there is certainly a legal distinction between Ruth Vrdolyak and AIC, since she is the sole shareholder of the corporation the true financial impact of the punitive damages award is not altered by separately apportioning the assessment against each defendant. Thus, in this particular situation it is appropriate to make both defendants jointly and severally liable for punitive damages in the amount of $150,000.00.

### INJUNCTIVE RELIEF IS APPROPRIATE

■ Defendants final objections all deal with the proposed injunctive relief. Defendants argue that injunctive relief is improper because Wessel was the only victim of the discrimination. Defendants further point out that the are prohibited by law from retaliating against other AIC employees.

As plaintiffs have argued, the ADA expressly contemplates injunctive relief in that it incorporates by reference 42 U.S.C. § 2000e–5, the remedial provisions of Title VII of the Civil Rights Act of 1964. Title VII provides that upon a finding of discrimination "the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate ..." 42 U.S.C. § 2000e–5. The defendants argument that injunctive relied is improper is not persuasive. The jury found that defendants conduct was malicious and willful and the evidence at trial provided no assurance that there is no reasonable probability of further non-compliance with the law. Further, it is clear from the testimony of Vrdolyak that she still believes that her conduct was proper. Thus, there is no reason to believe that she would behave any differently toward another disabled employee in the absence of injunctive relief.

This case is closely analogous to *EEOC v. Gurnee Inn Corp.*, 914 F.2d 815 (7th Cir. 1990), where the Court affirmed injunctive relief despite defendant's argument that the individual who had sexually harassed the victim had been fired by the defendant prior to trial. The Court noted that the managers who had failed to take action to stop the harassment were still employed by defendant. In this case, all of the persons who participated in the discriminatory decision making are still managing AIC. I find therefore, that an injunction is necessary to ensure future compliance with the ADA.

As to the notice to employees, however, I find although appropriate, that plaintiffs proposal to have this notice posted at each of AIC's clients job sites to be unreasonable. As defendants have argued the harm to AIC's client base could be significant, and I find that it would be more appropriate to require defendants to post this notice at AIC's corporate headquarters as well as disseminate a copy of this notice in each new guards Employee Handbook or Training Manual.

Finally, I do not find the three year period or the injunction against retaliation to be excessive. While it is true that there are no allegations of retaliation in this case, *see, Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir.1989), the evidence demonstrated that the possibility of retaliation is a real one. The differences in testimony of current employees of AIC, such as Jodi Coleman and Jan DiFilippo and the testimony of persons no longer working at AIC such as John Blyth and Cesar Ortega, support an inference that persons working at AIC felt intimated, as does the late change in DiFilippo's testimony concerning her opinion of Wessel's ability to perform the essential functions of his job. As the EEOC has argued, it has a strong interest in ensuring that employees of AIC will feel free to exercise their rights as set forth in the Notice without fear of intimidation or retaliation. Therefore, plaintiffs are granted the injunctive relief they seek except as to the posting of this notice at AIC's clients' buildings. Rather, this notice is to be disseminated in AIC Employee Handbooks or Training Manuals and posted at AIC's corporate headquarters in a conspicuous manner.

### CONCLUSION

For the reasons listed above, Plaintiffs motion for Entry of Judgment is hereby

**GRANTED IN PART** and **DENIED IN PART** as specifically detailed in the JUDGMENT of the court issued herewith.

**SO ORDERED:**

### JUDGMENT

The Court hereby enters Judgment upon the verdicts of the jury, rendered March 18, 1993, in favor of Plaintiff Equal Employment Opportunity Commission ("EEOC") and Intervening Plaintiff Charles H. Wessel ("Wessel") and against Defendants AIC Security Investigations, Ltd. ("AIC") and Ruth Vrdolyak ("Vrdolyak"). Pursuant to this Court's ruling of March 17, 1993, Defendant, AIC International, Ltd. is dismissed as a Defendant.

The Court orders that judgment be entered in favor of EEOC and Wessel and against the Defendants as follows:

1. AIC shall pay Wessel the sum of $22,000.00 as back pay based on the jury award, plus interest at the rate of six percent (6%), compounded annually, to the date of judgment, in accordance with 42 U.S.C. § 2000e-5, incorporated by reference into the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12117.

2. AIC and Vrdolyak, jointly and severally, shall pay Wessel the sum of $50,000.00 as compensatory damages, based upon the jury award, in accordance with 42 U.S.C. § 1981a(b).

The Court further orders that judgment be entered in favor of Wessel and against the Defendants as follows:

3. AIC and Vrdolyak, jointly and severally, shall pay Wessel the sum of $150,000.00 as punitive damages, reduced from the jury award of $500,000.00 in accordance with 42 U.S.C. § 1981a(b).

The Court further Orders pursuant to 42 U.S.C. § 2000e-5, incorporated by reference into the ADA, 42 U.S.C. § 12117, equitable relief in favor of the Equal Employment Opportunity Commission and against Defendants AIC and Vrdolyak as follows:

4. AIC, its officers, agents, employees, successors, and all those in active concert or participation with them, or any of them; and Vrdolyak, are enjoined from engaging in an employment practice which discriminates against any qualified individual on the basis of disability, including, but not limited to, discharging any qualified employee because of his or her disability.

5. AIC, its officers, agents, employees, successors, and all those in active concert or participation with them, or any of them: and Vrdolyak, shall not engage in retaliation or reprisal of any kind against any person because of such person's opposition to any practice made unlawful under the ADA, because of such person's filing a charge, testifying or participating in any manner in any investigation, proceeding or hearing under the ADA, because such person was identified as a potential witness for the EEOC in this action or in the investigation giving rise to this action, or because such person asserts any right under this Judgment.

6. Within seven (7) days of the entry of this Judgment, AIC and Vrdolyak shall provide a coy of the Notice attached as Exhibit A to every employee of AIC. In addition, AIC and Vrdolyak shall post a copy of the Notice on the premises of AIC in a conspicuous location. Further, all new employees of AIC are to be given a copy of this notice in AIC's Employee Handbook or Training Manual.

7. AIC and Vrdolyak shall maintain and keep available for inspection and copying by the EEOC records providing the following information with respect to any employee who is disabled within the meaning of the ADA: name, address, telephone number, social security number, date of hire, date of disciplinary action if applicable, date of discharge if applicable, and reason for any adverse employment action.

8. Every six (6) months for the duration of this Judgment, AIC and Vrdolyak shall provide to the EEOC a report including information set forth in the records described in Paragraph seven (7).

9. For purposes of paragraphs four through eight above this Judgment shall remain in effect for a period of three years from the date of entry.

582

### NOTICE TO ALL EMPLOYEES OF AIC

This notice is being posted by order of the Court in a lawsuit brought against AIC Security Investigations, Ltd. ("AIC") and Ruth Vrdolyak by the Equal Employment Opportunity Commission ("EEOC") and Charles H. Wessel. In the suit a federal jury has determined that AIC and Ruth Vrdolyak violated the Americans With Disabilities Act ("ADA") by discharging Charles H. Wessel from his position as Executive Director of AIC because of his disability. AIC and Ruth Vrdolyak have been ordered by the Court to pay to Charles H. Wessel back pay, compensatory damages including damages for mental distress, and punitive damages.

Under the Court's Judgment, AIC and Ruth Vrdolyak have been ordered not to discriminate against any qualified employee or applicant for employment because of his or her disability. The Court has also ordered AIC and Ruth Vrdolyak not to retaliate against any person who participated in the EEOC's investigation or trial of the case, or who exercises his or her rights under this Notice.

Should you have any complaints of discrimination on the basis of disability, you can contact the EEOC at 536 South Clark Street, Room 982, Chicago, Illinois 60605. EEOC charges no fee for their services, and has employees that speak languages other than English. EEOC's offices are accessible to the disabled.

### THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE

This Notice must remain posted for three (3) years from the date shown above and must not be altered, defaced or covered by any other material. Any questions concerning this Notice or compliance with its provisions should be directed to the EEOC, at the address shown above.