Evelyn WILLIAMS, Plaintiff,

v.

PHARMACIA OPTHALMICS, INC., Defendant.

No. 3:94–CV–653RM.

United States District Court, N.D. Indiana, South Bend Division.

April 1, 1996.

Tamara L. Renner, Banik and Renner, Elkhart, IN, John C. Hamilton, Doran Blackmond Ready Hamilton and Williams, South Bend, IN, for plaintiff.

Thomas J. Brunner, Jr., Paul J. Peralta, Kevin D. O'Rear, Kari A. Gallagher, Baker and Daniels, South Bend, IN, for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Evelyn Williams worked as an opthalmics sales person for Pharmacia Opthalmics, Inc. from 1985 to August 1994. In 1993, despite her earlier expressions of interest in promotion and her regional sales manager's recommendation, Pharmacia interviewed only men for, and promoted one of the men to, a

regional sales manager vacancy. Early in 1994, Ms. Williams made an inquiry within Pharmacia based on her perception that male sales people were being paid more than female sales people. Shortly after her inquiry, she was presented with a highly critical performance review that contained unreasonably demanding standards for achievement. She worked the balance of her time with Pharmacia with those unreasonable requirements hanging over her.

On March 7, a jury found that Ms. Williams's sex was a motivating factor in Pharmacia's decision not to interview her for the regional manager's position and in Pharmacia's later decision to terminate her employment. The jury also found that although Ms. Williams did not prove a violation of the Equal Pay Act, her inquiry into pay disparities also was a motivating factor in Pharmacia's decision to terminate her employment. By agreement of the parties, the jury was not asked to determine issues of back pay or front pay. The jury awarded Ms. Williams compensatory damages in the amount of $500,000.00, half of which reflected lost future earning ability. The jury also awarded Ms. Williams $750,000.00 in punitive damages. The case is now before the court for modification of the verdict and determination of equitable relief prior to entry of verdict.

Following the jury's verdict, the court afforded the parties until March 20 to submit briefs on the remaining issues. Ms. Williams tendered her brief a day late; her motion for leave to file her brief late pends. Pharmacia's motion to conform the damage award with 42 U.S.C. § 1981a(B)(3) also pends. The trial and post-trial briefs also place before the court issues concerning the amount of back pay to be awarded, whether Pharmacia should be ordered to reinstate Ms. Williams as an employee, whether front pay is a form of relief permissible in a sex discrimination case, and the amount of any front pay award.

The court grants Ms. Williams's motion to file her brief late, and turns to the remaining motions and issues.

### 1. Reduction of the Jury Award

■ Pharmacia had between 700 and 800 employees in the two years immediately before Ms. Williams's discharge. 42 U.S.C. § 1981a(b)(3)(D) provides:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> **(D)** in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar, $300,000.

The jury's entire award falls within the limits set forth in this statute. *See* Final Instruction No. 15. Both the compensatory damage award and the punitive damage award exceed the combined limit. Accordingly, Ms. Williams's verdict must be reduced from a combined $1,250,000.00 to $300,000.00, although she may recover additional sums for back pay and, perhaps, for front pay.

Ms. Williams does not dispute that her verdict must be pared, but she vehemently disputes the propriety of remolding it as Pharmacia suggests—by maintaining the jury's proportional division of compensatory damages (40%) and punitive damages (60%), and so awarding her $80,000.00 in compensatory damages and $120,000.00 in punitive damages. The court agrees with Ms. Williams on this point. The case Pharmacia cites in support of its proposal offers no support; in *U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 823 F.Supp. 571, 577–579 (N.D.Ill.1993), *aff'd in part and rev'd in part* 55 F.3d 1276 (7th Cir.1995), the court was concerned with allocation of an award between defendants rather than between categories of damages, and with the excessiveness of the jury's award of punitive damages. Indeed, rather than preserving the jury's allocation, the district court's modification of the verdict reduced the ratio of punitive damages to compensatory damages from 10:1 to 3:1. Neither the district court's action nor

the court of appeals' ensuing holding that damages could not be assessed against the individual defendant supports Pharmacia's proposal.

The court does not embrace Ms. Williams's gratuitous implication of malice to Pharmacia's proposal on the method of handling an issue not yet decided within this circuit. Even Ms. Williams concedes that her verdict must be modified, and no controlling precedent instructs how that should be done. Pharmacia has tendered one reasonable approach, but has not persuaded the court that its formula is the most reasonable. The availability of compensatory damages apart from back and front pay demonstrates Congressional recognition that discriminatory employment practices inflict injuries beyond mere loss of a paycheck or reduction in wages and benefits, and Congressional intent that victims of employment discrimination should be compensated for those non-pecuniary injuries. The availability of punitive damages discloses Congressional intent that juries be permitted to punish particularly egregious instances of discrimination, but the "cap" on damages bespeaks a coincident intent to limit that punishment when, as here, substantial non-wage injuries have been proven. Compensation is the primary purpose of the new remedies provided by the 1991 Act, and the jury's award should be applied first for that purpose. The court will cap the compensatory damages pursuant to the statutory limit, leaving no room for punitive damages. *See also Hogan v. Bangor and Aroostook R.R. Co.*, 61 F.3d 1034, 1037 (1st Cir.1995) (reaching the same result, but doing so to obviate the need to consider the propriety of the punitive damage award).

Accordingly, the court reduces the compensatory award from $500,000.00 to $300,000.00, and vacates the punitive damages award. The court does so without prejudice to Ms. Williams's right to seek full or partial reinstatement of the punitive damages award in the event the compensatory damages award is later reduced, for any reason, to a sum below $300,000.00.

### 2. Back Pay

Ms. Williams seeks an award of back pay, and Pharmacia's post-trial brief does not challenge her right to such an award. While the two testifying economists disagreed over inferences to be drawn from the rankings Pharmacia periodically issued to employees, they had only one essential area of disagreement with respect to the calculation of damages: Dr. Roger Skurski based his calculations on the assumption that Ms. Williams would find a new job within a few months, but that earnings in her new job would reflect that of the average woman of her age and education; Dr. Joan Haworth assumed that Ms. Williams would be out of work longer, but ultimately would find a job in which her earnings would be comparable to what she was making with Pharmacia. Neither projection has proven correct to date. Ms. Williams has found employment as an independent representative for several pharmaceutical companies, but she has yet to make a profit in that work. The evidence introduced at trial did not suggest appreciable income in comparison to expenses that would not have been reimbursed had she continued to work at Pharmacia.

Accordingly, the wages Ms. Williams lost between her termination and trial were higher than her own expert projected, since Dr. Skurski assumed she would find moderate-paying employment by the time of trial; despite her efforts to find work comparable to her work with Pharmacia, she has found no such work, and the court is not persuaded that she has failed to make reasonable efforts to mitigate her damages. When projected income is removed from Dr. Skurski's projections, the court finds that Ms. Williams lost wages and benefits in the sum of $180,330.00 between her August 10, 1994 termination and the time of trial in March 1996.

This figure may be lower than Ms. Williams's actual damages. The jury found that Pharmacia violated her civil rights when it chose not to interview her for Mike Baker's regional manager position when Mr. Baker vacated it nearly a year earlier. On a failure to interview claim, the court might evaluate the likelihood that Ms. Williams would have gotten the job (rather than simply the interview) and multiply that probability against the difference between what she

earned as a sales representative and what she would have earned as a regional manager. *See Doll v. Brown,* 75 F.3d 1200, 1205–1206 (7th Cir.1996). The record does not disclose the regional manager's pay, however, so the court cannot compute the wage differential, leaving no reason to estimate the likelihood that Evelyn Williams would have succeeded Mike Baker as regional manager had she not been female.

Ms. Williams is entitled to $180,330.00 in lost wages and benefits, in addition to her statutorily-limited compensatory and punitive damages.

### 3. Reinstatement

■ Ms. Williams seeks reinstatement to her position as an opthalmics sales representative for Pharmacia.[1] Reinstatement to the former position is a permissible remedy for an employee whose gender played a part in her discharge. *Hennessy v. Penril Datacomm Networks, Inc.,* 69 F.3d 1344, 1351 (7th Cir.1995). Indeed, reinstatement is the preferred remedy, but ultimately rests in the trial court's discretion. *Hutchison v. Amateur Electronic Supply, Inc.,* 42 F.3d 1037, 1045–1046 (7th Cir.1994). For the reasons that follow, the court believes that reinstatement is inappropriate.

Of some, though not great, significance is the fact that another person now holds Ms. Williams's former position. As Pharmacia notes, that person did not discriminate against Ms. Williams on the basis of gender, but "[n]o one has a *right* to occupy a position that he obtained as a result of unlawful discrimination, even if he himself was not complicit in the discrimination." *Doll v. Brown,* 75 F.3d at 1205. Thus, the effect on innocent third persons is a matter for consideration, but is a weak factor in the ordinary case in which the employer may reassign the innocent successor employee to another position. Events soon to occur limit the possibility of the innocent person's reassignment, however. Pharmacia is merging with Upjohn, and Pharmacia's opthalmics division will cease to exist in June 1996. Hundreds of jobs (presumably Upjohn jobs as well as Pharmacia

jobs) will cease to exist. Thus, the eventual effect on the innocent successor cannot be evaluated with any certainty.

■ More important, however, is the merger's effect on Ms. Williams's position. The Seventh Circuit has noted that "a continued reduction-in-force may make reinstatement infeasible." *Coston v. Plitt Theatres, Inc.,* 831 F.2d 1321, 1331 (7th Cir.1987), *vacated on other grounds,* 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988). Reinstatement generally is inappropriate in such cases because the plaintiff's job has been eliminated or consolidated with other responsibilities. This circumstances of this case differ: Ms. Williams's position still exists, but its days are numbered. Ms. Williams's post-trial brief recognizes this when it asks the court "to order reinstatement on a conditional basis to some function within the Upjohn/Pharmacia combination ... until an appropriate spot in the opthalmics sector of the business opens up." Hakan Edstrom's unrebutted testimony indicates, however, that the Pharmacia opthalmics division will cease to exist in June, so there is no assurance that any appropriate spot in the opthalmics sector of the business will open up. The court cannot order the plaintiff's placement in a job for which she has not shown herself to be qualified. *McKnight v. General Motors Corp.,* 973 F.2d 1366, 1370–1371 (7th Cir. 1992), *cert. denied,* 507 U.S. 915, 113 S.Ct. 1270, 122 L.Ed.2d 665 (1993).

Accordingly, despite the court's recognition that Ms. Williams, if reinstated, would not be working with or under those persons whose decisions were challenged in this trial, *compare Price v. Marshall Erdman & Assoc., Inc.,* 966 F.2d 320, 325–326 (7th Cir. 1992), the court believes that in light of the pending merger and reorganization, reinstatement is an inappropriate exercise of the court's equitable powers. The court declines to order reinstatement.

### 4. Front Pay

■ Pharmacia argues that a Title VII plaintiff cannot recover an award of front

---

1. Despite her success on the failure-to-promote claim, the court does not understand Ms. Williams to seek "instatement" to a regional sales manager position.

pay. The court disagrees. Any doubt that may have existed in 1990, *see McKnight v. General Motors Corp.*, 908 F.2d 104, 116–117 (7th Cir.1990), has been erased by intervening development in the law. The *McKnight* court expressed doubt because an award of front pay "is really damages for lost future earnings—a legal rather than an equitable remedy", 908 F.2d at 117, while the Civil Rights Act of 1964 (unlike the Age Discrimination in Employment Act) then provided only equitable remedies. Two developments have eased that concern. First, in the years since *McKnight*, we have learned that front pay actually is a form of equitable relief to be decided by the court rather than the jury, even in an age discrimination case. *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1141 (7th Cir.1994); *Fortino v. Quasar Co.*, 950 F.2d 389, 398 (7th Cir.1991). Second, less than seventeen months after *McKnight*, the scope of remedies available for sex discrimination changed dramatically as the Civil Rights Act of 1991 became effective. Without eliminating any right to equitable relief upon a proper showing, the 1991 Act added a right to legal remedies under appropriate circumstances. Although the Seventh Circuit has yet to affirm a contested front pay award in a sex discrimination case, the Seventh Circuit has recognized the different analysis required for cases decided under the 1991 Act. *Hutchison v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1045 (7th Cir.1994) ("That availability of front pay under the pre–1991 Act remains an open question in this Circuit.").

This case was decided under the 1991 amendments. Front pay is an available remedy, though such an award remains discretionary with the court.

■ Pharmacia contends that *no front pay* should be awarded because Ms. Williams was awarded punitive damages, because to do so would be speculative, because Ms. Williams's position and her occupation of it would have been uncertain had she remained with Pharmacia, and because an award of front pay would duplicate the jury's award for lost

future earning capacity. The court agrees only in part.

■ As noted, no Seventh Circuit case has upheld a front pay award in a sex discrimination case, so little guidance exists for the decision outside the age discrimination field. In deciding whether to award front pay in age discrimination cases, "the court considers such factors as whether the plaintiff has a reasonable prospect of obtaining comparable employment, whether the time period for the award is relatively short, whether the plaintiff intended to work or was physically capable of working and whether liquidated damages have been awarded." *Downes v. Volkswagen of America, Inc.*, 41 F.3d at 1141.

Ms. Williams seeks an award of front pay for the next seventeen years, or until she reaches age 57, reflecting what Dr. Skurski defined as the average work life of a woman of Ms. Williams's age and education. The court agrees with Pharmacia that such a time span is far too great for a front pay award. *See Davis v. Combustion Engineering, Inc.*, 742 F.2d 916, 923 (6th Cir.1984) (age case: "the award of front pay to a discriminatorily discharged 41 year old employee until such time as he qualifies for a pension might be unwarranted. On the other hand, the failure to make such an award for an employee age 63, likewise discriminatorily discharged, might be an abuse of discretion."). A remedy must be based on events more likely than not to occur, and the existence of future uncertainties have led courts to act cautiously when considering awards of front pay for lengthy periods. *See Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 729 (2nd Cir. 1984) ("The time period was relatively short, approximately four years, and thus did not involve some of the uncertainties which might surround a front pay award to a younger worker.").[2]

■ Future uncertainties abound in this case. An order that Pharmacia pay Ms. Williams the present value of all the wages she would have earned over the next seventeen years assumes that she would have

---

**2.** Such issues do not appear to have been raised in *Scarfo v. Cabletron Systems, Inc.*, 54 F.3d 931, 954–956 (1st Cir.1996), a case cited by Ms. Williams.

worked for Pharmacia for a for more than twenty-five years; the court recalls no evidence of anyone, other than senior management personnel, having worked so long for Pharmacia. Further, to the extent that a front pay award is necessary to make a discrimination victim whole, it assumes that the former employee will find no other employment during the period for which front pay is offered. *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1231 (7th Cir.1995) ("Front pay is the difference (after proper discounting to present value) between what the plaintiff would have earned in the future had he been reinstated at the time of trial and what he would have earned in the future in his next best employment."). The pharmaceutical sales market has proven difficult for Ms. Williams to re-enter over the past year and a half, but she remains an intelligent, articulate, experienced woman quite interested in working in her field. As difficult as the termination and the months leading to the termination may have been emotionally, there is no evidence of any lasting psychological injury that would reduce her fitness as a saleswoman. No reason exists to believe she will be a permanently unprofitable member of the labor economy.

The court agrees with Pharmacia that a seventeen-year front pay award is not justified, but a conclusion that no front pay at all should be awarded does not inevitably follow. Over the last year and a half, Ms. Williams has tried conscientiously but unsuccessfully to replace even some of the income Pharmacia wrongfully took from her. While there is no reason to believe she will be perpetually unsuccessful, neither is there any reason to believe that the doors of the market will open wide to her upon entry of judgment in this case. It is reasonable to believe that for at least a limited time after judgment, she will continue to suffer the loss Pharmacia has inflicted upon her. Accordingly, the court turns to Pharmacia's other arguments against any award of front pay.

Pharmacia contends that front pay should not be awarded because the jury awarded $750,000.00 in punitive damages. Pharmacia is correct that in age cases, an award of liquidated damages based on a finding of willfulness counsels against an award of front pay, *see, e.g., Price v. Marshall Erdman & Assoc., Inc.*, 966 F.2d at 326, but the cases so holding assume that the plaintiff will receive the liquidated damages award. In light of the enforcement of the statutory cap in Part 1 of this opinion, Ms. Williams will receive no punitive damages. Accordingly, the court need not consider whether (or to what extent) an award of punitive damages in a post–1991 sex discrimination case counsels against an award of front pay.

Pharmacia also argues that uncertainty over the continuation of Ms. Williams's position and the deterioration of her pre-termination performance in her position make her continued employment as a sales representative with Pharmacia (even without sex discrimination) too uncertain to allow an award of punitive damages. The court agrees that these considerations counsel against a front pay award reflecting a period of years, but does not agree that they suffice to defeat any award at all. *See Downes v. Volkswagen of America, Inc.*, 41 F.3d at 1143 (no abuse of discretion in awarding 3 years' front pay despite recent and impeding restructurings that cut workforce by 60 percent).

Hakan Edstrom testified that with the merger between Pharmacia and Upjohn, Pharmacia's opthalmics division will cease to exist in June 1996. The merger will entail a loss of 400 to 500 jobs, though the record is unclear whether the present Pharmacia work force will bear the full brunt of the job loss. Mr. Edstrom testified that the skills required of people now selling Pharmacia opthalmics products will change with the merger, and that Upjohn personnel are being reassigned to opthalmics jobs.[3] Mr. Edstrom's testimony does not shake the court's belief that Ms. Williams would still, but for the discriminatory discharge, be working as a sales represen-

---

**3.** Mr. Edstrom did not discuss the merger's impact on regional sales managers. It must be recalled that the jury found that Pharmacia discriminated against Ms. Williams when it failed to interview her for a regional manager position.

Thus, if Ms. Williams would have been more likely to be a merger casualty as a sales rep than as a regional manager, that vulnerability, too, flows from Pharmacia's having treated her differently because of her sex.

tative at the time of the merger, or that as a middle-of-the-pack performer as a Pharmacia opthalmics sales person,[4] she would have an opportunity to try her hand in one of the restructured post-merger positions. Perhaps her performance would be inadequate to continue more than a year in such a position, but that uncertainty affects the length of time to be addressed by a ·front pay award, not whether any such award should be entered at all.

Finally, Pharmacia argues that any front pay award would duplicate the jury's award for loss of future earning capacity. Again, this argument has more force when addressed to a work life front pay award than when addressed to a more limited award. Dr. Skurski testified, and the court must assume the jury found, that Ms. Williams's termination reduced her attractiveness to other prospective employers, and reduced her earning ability, for her entire work life. For the reasons discussed above, any front pay award to Ms. Williams will not address her entire work life, so the injury for which compensatory damages were awarded will outlive any front pay award. Some slight overlap between the jury award and the front pay award will exist, but Ms. Williams will not receive the full measure of the jury award in any event.

Since reinstatement is inappropriate, an award of front pay in lieu of reinstatement is a necessary and appropriate part of the remedy to be afforded Ms. Williams. In light of Ms. Williams's qualifications and experience, and the uncertain future of Pharmacia's opthalmics sales persons, the court believes that the front pay award should reflect one year's wages and benefits. According to the figures accepted by both Dr. Skurski and Dr. Haworth, after adjustment for inflation and discounted to present value that figure would amount to a salary of $90,798.00, plus benefits of 27.22% (an additional $24,715.00), for a total of $115,513.00.

### 5. Conclusion

For the foregoing reasons, the court now:

a. GRANTS the plaintiff's motion (filed March 21, 1996) to file her brief a day late;

b. GRANTS IN PART the defendant's motion (filed March 20, 1996) to conform damage award with 42 U.S.C. § 1981a(B)(3); and

c. DIRECTS the clerk to enter judgment for the plaintiff and against the defendant in the aggregate sum of $595,-843.00, consisting of compensatory damages in the sum of $300,000.00, back wages and benefits in the sum of $180,-330.00, and front pay in the sum of $115,513.00.

Costs shall be assessed against the defendant. Fed.R.Civ.P. 54(d)(2)(B) shall govern the period within which the plaintiff may file her fee petition.

SO ORDERED.

---

4. The jury may have disbelieved Pharmacia's contention that combined-sales-to-quota was the only significant measure of a sales representative's performance, and that finding is binding on the court, *McKnight v. General Motors Corp.*, 973 F.2d at 1370, and the court cannot deny reinstatement on a factual basis the jury rejected. *U.S. E.E.O.C. v. Century Broadcasting Corp.*, 957 F.2d 1446, 1463 (7th Cir.1992). The jury may have believed instead, however, that combined-sales-to-quota was the governing measurement but that discrimination lay in the fact male sales persons were not given unreasonable, inflexible requirements upon a poor showing on this measurement.

Accordingly, the court, sitting as fact-finder, finds that despite the logic of using combined-sales-to-quota as the most important measurement of performance, Pharmacia did not invariably do so. Pharmacia provided its sales people with a dizzying array of performance measurements, and the court is persuaded that a strong performance in one area could offset a poor performance in another. In earlier years, Ms. Williams had been a superior performer under several measurements, but Pharmacia (as well as the combined successor company) is not required to keep an employee whose performance has fallen off on the strength of past glory. Nonetheless, even in recent years, Ms. Williams had been an average performer in several areas; hence the description as a middle-of-the-pack performer.